[Nos. B078381, B078352. Second Dist., Div. Five. Feb. 1, 1994.]

DAN ALEXANDRE ZENIDE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RITA IGNACCOLO, Real Party in Interest.

COUNSEL

Dan Alexandre Zenide, in pro. per., Crawford & Crawford and Debra Vaniman Crawford for Petitioner.

No appearance for Respondent.

William M. Hilton for Real Party in Interest.

OPINION

**GRIGNON, Acting P. J.**—This is an international child custody dispute involving conflicting child custody orders of the courts of France and Texas. Father, Dan Alexandre Zenide, petitioner herein, seeks to enforce a Texas child custody order awarding him custody of his two minor daughters. Mother, Rita Ignaccolo, real party in interest herein, seeks to enforce a French child custody order awarding her custody of her two minor daughters. Respondent court found in favor of mother and ordered enforcement of the French custody order awarding her custody. Father petitions this court for a writ of mandate directing respondent court to enforce the Texas child custody order awarding custody to him. We deny the petition.

## FACTS AND PROCEDURAL BACKGROUND

Father and mother were married in France on May 7, 1980. Their daughter Maud was born in France on February 4, 1981, and their daughter Adele was born in France on September 29, 1984. Mother and father separated and were divorced in France in late 1989. At that time, the parties agreed that father would have sole custody of the children and mother would have liberal visitation rights. This agreement was confirmed in a French divorce judgment on December 20, 1989.

In July 1990, father moved with Maud and Adele to Houston, Texas for business reasons. Mother claims she believed father was only taking the girls to Texas for the summer. Father claims mother was advised he was moving to Texas permanently. The French divorce judgment did not preclude father from moving the two girls out of the country.

When the two girls were not returned for the school year, mother lodged a complaint for nonpresentation of the children on September 3, 1990. She requested that custody be awarded to her. On September 11, 1990, the French family law court declined to award custody to mother, but did award her custody during school vacations. On September 20, 1990, mother appealed the French trial court order to the French intermediate appellate court. She sought joint custody and an order that the two girls live with her and not be removed from France. Father filed a cross-appeal. On February 9, 1991, the intermediate appellate court ordered both parties to appear before it on April 2, 1991.

On May 28, 1991, the French intermediate appellate court ruled in favor of mother and reversed the order of the trial court. The intermediate appellate court found as follows: Mother was not properly informed by father that he planned to move the children permanently to Texas; father violated French law when he kept the two girls in Texas after the first half of the summer vacation without informing mother of his intentions; it is in the girls' best interests to maintain maximum contact with both mother and father; mother will not be able to maintain regular contact with her daughters if they live in Texas; the two girls will benefit from residence in their own country near their mother; and there is nothing to indicate mother is not a good mother. The intermediate appellate court awarded custody to mother and liberal visitation to father and ordered that the children were to live in France.

On May 31, 1991, father appealed to the French Supreme Court. On June 6, 1991, father sought in Texas a modification of the order of the French

intermediate appellate court. Apparently, father did not notify the Texas court that an appeal of the order was pending before the French Supreme Court. On June 21, 1991, the Texas court awarded temporary custody to father and set the matter for a formal hearing on August 14, 1991. Wife had notice of the hearing but elected not to appear on the ground Texas had no jurisdiction to modify the French custody order.

On September 30, 1991, Texas modified the French custody order and awarded custody to father. The Texas court found it had jurisdiction because the two girls had resided in Texas for 15 months prior to the commencement of the Texas proceeding. The Texas court further found that the children had a significant connection with Texas, and it was in the children's best interests that the matter be heard in Texas. The Texas court awarded custody to father and permitted mother very limited monitored visitation in Texas.

On November 25, 1992, the Supreme Court of France affirmed the order of the intermediate appellate court, which had awarded custody to mother.

Father moved with his new wife and the two girls to California. On February 22, 1993, mother registered the French decrees with the respondent court. On April 21, 1993, mother filed a motion to enforce the French custody order in California. On June 25, 1993, father filed a motion to enforce the Texas custody order in California. A hearing was held on August 3, 1993, in connection with the two motions. Declarations of the two girls were presented, which indicated the girls strongly desired to remain with their father and stepmother in California.

On August 10, 1993, respondent court found in favor of mother and ordered enforcement of the French custody order. Respondent court ordered father to deliver the children to mother, but stayed enforcement to October 13, 1993. Respondent court found the Texas order was invalid on the grounds mother had not been properly served with notice of the Texas hearing, Texas did not have jurisdiction because the French matter had still been pending in the French Supreme Court, and father's hands were unclean because he had refused to obey the French order and had improperly retained the children in Texas in violation of the French order.

Father filed a notice of appeal from this order on September 2, 1993. He filed this petition for writ of mandate, prohibition, certiorari or other appropriate relief on September 13, 1993. Mother responded on September 21, 1993. On October 14, 1993, father filed with this court a petition for writ of supersedeas in connection with his appeal from the order. On October 28, 1993, we stayed enforcement of respondent court's order and issued an order

to show cause with oral argument set for January 14, 1994. Mother has filed a supplemental response.

DISCUSSION

■ Although the August 10, 1993, order of respondent court is appealable as a final order on a collateral matter (Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1992) ¶ 16:81, citing *In re Marriage of Skelley* (1976) 18 Cal.3d 365 [134 Cal.Rptr. 197, 556 P.2d 297] and *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728 [137 Cal.Rptr. 568]), we conclude appeal is not an adequate remedy. This child custody dispute has been ongoing since September 1990 and father has retained custody of the children in violation of the French custody order since May 28, 1991. The children, who were six and nine at the outset of the dispute, are now nine and twelve. They have not had any significant contact with their mother for three years. It is imperative that this matter be resolved as expeditiously as possible.

In connection with interstate and international child custody disputes, California has adopted the Uniform Child Custody Jurisdiction Act (UCCJA). (Fam. Code, § 3400 et seq.; Civ. Code, former § 5150 et seq.)[1] Texas has also adopted the UCCJA (Tex. Fam. Code Ann., §§ 11.51-11.75); France has not. The general purposes of the UCCJA include: the avoidance of competition and conflict for jurisdiction with other courts; the promotion of cooperation among courts; the assumption of jurisdiction by the court with the closest connection to the child; the discouragement of continuing controversy; the deterrence of abductions and unilateral removals of children; the avoidance of relitigation; and the facilitation of enforcement of child custody decrees. (Fam. Code, § 3401, subd. (a); Civ. Code, former § 5150.) ■ "The exclusive method of determining subject matter jurisdiction in custody cases in California is the [UCCJA] . . . ." (*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 891 [168 Cal.Rptr. 345].)

"The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this part or which was made under factual circumstances meeting the jurisdictional standards of this part, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this part." (Fam.

---

[1]Effective January 1, 1994, the portions of the Civil Code which are relevant to this case were repealed, then enacted as sections of the new Family Code, effective January 1, 1994. For ease of reference, we have cited both the former Civil Code and new Family Code sections.

Code, § 3413; Civ. Code, former § 5162.) "The general policies of this part extend to the international area. The provisions of this part relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons." (Fam. Code, § 3424; Civ. Code, former § 5172; accord, *Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008, 1013 [202 Cal.Rptr. 490].)

■ Civil Code, former section 5162 (now Fam. Code, § 3413) "declares, as a matter of state law, that custody decrees of sister states will be recognized and enforced. Recognition and enforcement are mandatory if the state in which the decree was rendered (1) has adopted the [UCCJA], (2) has statutory jurisdictional requirements substantially like those of the [UCCJA], or (3) would have had jurisdiction under the facts of the case if the [UCCJA] had been the law in the state." (*In re Marriage of Schwander* (1978) 79 Cal.App.3d 1013, 1018 [145 Cal.Rptr. 325]; accord, *In re Marriage of Hopson, supra,* 110 Cal.App.3d at pp. 892-893.)

■ "In all disputes under the [UCCJA], the threshold question is which state may properly assume jurisdiction." (*Plas* v. *Superior Court, supra,* 155 Cal.App.3d at p. 1013.) "The [UCCJA] gives preference to 'home state' jurisdiction under [Civil Code, former] section 5152, subdivision (a)(1)." (*Id.* at p. 1014.) " 'Home state' means the state in which the child immediately preceding the time involved lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." (Fam. Code, § 3402, subd. (e); Civ. Code, former § 5151, subd. (5).) Physical presence of the child, while desirable, is not necessary to confer jurisdiction on a state. (Fam. Code, § 3403, subd. (c); Civ. Code, former § 5152, subd. (c).) Physical presence of the child and one parent in the state is not sufficient in and of itself to confer jurisdiction on the state. (Fam. Code, § 3403, subd. (b); Civ. Code, former § 5152, subd. (b).)

■ "A court of this state shall not exercise its jurisdiction under this part if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this part, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." (Fam. Code, § 3406, subd. (a); Civ. Code, former § 5155, subd. (1).) "If a court of another state has made a custody decree, a court of

this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this part or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction." (Fam. Code, § 3414, subd. (a); Civ. Code, former § 5163, subd. (1).) A state may not modify the child custody order of another state which continues to have jurisdiction, even if the state may have had jurisdiction if this were an initial proceeding. (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689 [186 Cal.Rptr. 772, 652 P.2d 1003].)

It is undisputed that France was the home state of the children at the time of the initial stipulated child custody decree in December 1989. The parties had been married in France, the children had been born in France, and the children had resided in France with their parents from birth until the commencement of the divorce proceeding, except for temporary absences. In July 1990, father took the children with him to Texas. The evidence is in conflict as to whether the move was intended to be a temporary absence or permanent move. In any event, when the children were not returned to France at the end of the summer, in September 1990, mother commenced proceedings in France to modify the initial child custody decree.

Father participated in the French modification proceedings at all stages. He was initially successful in maintaining custody of the children. However, on May 28, 1991, the French intermediate appellate court awarded custody to mother and ordered the children returned to France. On May 31, 1991, father appealed the decision to the French Supreme Court. While the appeal was pending, father commenced modification proceedings in Texas. Texas assumed jurisdiction and modified the French custody order. We conclude Texas was without jurisdiction to modify the French child custody order.

First, child custody proceedings were still pending in France by virtue of father's appeal to the French Supreme Court. The Texas court had an obligation to make inquiries concerning the possibility that a child custody proceeding was pending in France. (Fam. Code, § 3406, subd. (b); Civ. Code, former § 5155, subd. (2).) Father also had an obligation to inform the Texas court of the pending French proceeding. (Fam. Code, § 3409; Civ. Code, former § 5158.) Second, Texas did not have jurisdiction to modify the French custody order unless France no longer had jurisdiction to modify the decree. At the time mother initiated modification proceedings in France, France continued to have jurisdiction as the home state of the children and as the residence of mother. Even after the children had resided in Texas with their father for more than six months, France continued to have continuing exclusive jurisdiction to modify its child custody order by virtue of mother's

continuing residence in France. (*Kumar* v. *Superior Court, supra,* 32 Cal.3d at pp. 695-700; *In re Janette H.* (1987) 196 Cal.App.3d 1421, 1430-1431 [242 Cal.Rptr. 567].)

 Father contends the French custody decree was not enforceable because France did not exercise jurisdiction in substantial conformity with the UCCJA. As indicated above, this contention is without merit. France had continuing exclusive jurisdiction to modify its own valid child custody decree. Father further contends the French modification of the custody decree was not in the best interests of the children. Specifically, father argues that the modification divesting him of custody was a punitive measure designed to punish him for taking the children out of France to Texas. We are not persuaded by this argument. A careful reading of the French modification decree makes clear that the French intermediate appellate court found it was in the best interests of the children to reside in their own country with their mother. There is nothing in the language of the decree which implies an intent to punish father, although it did find that father moved the children to Texas without properly notifying mother, and kept the children in Texas in contravention of mother's visitation rights.

 We conclude respondent court did not err in refusing to enforce the Texas modification of the French custody decree. Texas was without jurisdiction to modify the French decree.[2]

## DISPOSITION

The petition for writ of mandate, prohibition, certiorari or other appropriate relief is denied and the temporary stay ordered by this court on October 28, 1993, is vacated. The petition for writ of supersedeas or other appropriate stay order and for an immediate stay is denied. The August 10, 1993 order of respondent court is stayed for 30 days following issuance of the remittitur by this court to allow father to petition the appropriate French court for a modification of the French custody decree.

Armstrong, J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied February 23, 1994.

---

[2]Since we have concluded Texas was without jurisdiction to modify the French custody order, we need not reach the other bases for respondent court's order.